IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PETER PRITCHETT, #284708,        )
                                 )
       Plaintiff,                )
                                 )
v.                               )  CIVIL NO. 3:13cv712-WHA
                                 )
OFFICER SHANE HOUSE; and         )
OFFICER TIM TERRY,               )
                                 )
       Defendants.               )
                                 )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION

In this 42 U.S.C. § 1983 action, Plaintiff Peter Pritchett, a former inmate of the Alabama Department of Corrections, claims that on September 27, 2011, Defendants Shane House and Tim Terry,[1] two law enforcement officers, searched his home and seized his mobile phone without a search warrant or consent, resulting in Alabama criminal charges against him for enticing a child to enter a building to perform sex acts and electronic solicitation of sex acts from a minor. Docs. 1, 49-4 & 49-5. Pritchett unsuccessfully tried to suppress the evidence uncovered during the search. Doc. 49-7 at 4. At trial, Pritchett was found guilty on both counts, and he was sentenced to 30 months in prison. Doc. 49-11. He has since been released from custody. *See* Doc. 54 at 4 (showing nonprison return address for Pritchett). In this suit, Pritchett seeks monetary damages. Doc. 1 at 4.

Pritchett does not clarify in his pleadings whether he sues Defendants in their official

---

[1] Pritchett sued other defendants who have since been dismissed. *See Pritchett v. Farr*, 592 F. App'x 816, 818 n.2 (11th Cir. 2013) (per curiam); Doc. 20 at 4 n.2 (noting the dismissal of the Wadley Police Department and the Randolph County Sheriff's Department); Doc. 47 (dismissing Derek Farr).

capacities, individual capacities, or both. In the interest of fairness and completeness, the court will assume that Pritchett intended to bring claims against Defendants in both their individual and official capacities. Defendants have filed special reports and supporting evidentiary materials addressing Pritchett's claims for relief. Upon consideration of the evidentiary materials, the court construes Defendants' report (Doc. 49) as a motion for summary judgment, as expressly contemplated by the court's Order of May 12, 2015. Doc. 50. The court has reviewed this motion and the evidentiary materials filed in support, and concludes that the motion for summary judgment is due to be granted.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating that there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Pritchett to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate that the court disregard elementary principles of production and proof in a civil case. Here, Pritchett fails to demonstrate a genuine dispute of material fact so as to preclude summary judgment on his claims against the defendants. *Matsushita*, 475 U.S. at 587.

### III. DISCUSSION

**A.      Summary of Material Facts**

The court views the evidence in the light most favorable to Pritchett, the nonmoving party. On March 1, 2011, Defendant Shane House was a police officer employed by the Town of Wadley, Alabama, and Defendant Tim Terry was the Chief of Police of the Town of Wadley, Alabama. Docs. 49-1 at 1 & 49-2 at 1.

On March 1, 2011, Denise Phillis Thomas filed a report with the Wadley Police Department, and House prepared the written incident report. Thomas indicated that her daughter had been receiving text messages of a sexual nature from a man named "Peter." Docs. 49-1 at 1–2 & 49-3 at 1–4. House investigated the matter and determined that the text messages were sent from Pritchett's mobile phone. Docs. 49-1 at 2–3 & 49-3 at 6. Upon the recommendation of an Assistant District Attorney for Randolph County, Alabama, House swore out a complaint for

Pritchett's arrest for the crimes of electronic solicitation of a minor and enticing a child to enter, and a judge signed the arrest warrant on March 4, 2011. Docs. 49-1 at 3–4, 49-4 at 3 & 49-5 at 3. House and Terry went to Pritchett's home the next day, March 5, 2011, where they arrested Pritchett. Docs. 49-1 at 4, 49-2 at 4 & 49-8 at 1. According to Defendants, they did not search Pritchett's house, but they patted him down and found a mobile phone in the pocket of his pants. Docs. 49-1 at 4 & 49-2 at 4. House secured the phone and kept it with him when they transported Pritchett to the station. Docs. 49-1 at 4 & 49-2 at 4. Pritchett, on the other hand, maintains that Terry removed the phone from a table, not his pocket. Doc. 54 at 1.

Either way, Pritchett signed a waiver of counsel form after he arrived at the station. Docs. 49-1 at 4–5, 49-2 at 4 & 49-3 at 9. According to the officers, Pritchett freely answered questions, gave them verbal consent to look at the text messages on his phone, and provided the passcode to unlock it. Docs. 49-1 at 4 & 49-2 at 4. During questioning, Defendants reviewed the contents of Pritchett's phone. Doc. 40 at 3. They then detained Pritchett. Doc. 40 at 3. The case information sheet for Pritchett's criminal proceedings indicates he was arrested on March 5, 2011. Doc. 49-8. A newspaper report dated March 9, 2011 indicates that Pritchett recently had been charged with enticing a child and electronic solicitation. Doc. 54-1 at 2. Pritchett was indicted on August 16, 2011. Doc. 49-8 at 2. On August 31, 2011, Pritchett entered a plea of not guilty and waiver of arraignment. Doc. 49-8 at 6.

As referenced above, Pritchett's account diverges somewhat from Defendants' version of the events surrounding his arrest. Pritchett stated in his original complaint that on September 27, 2011, at about 11:45 p.m., House and another officer entered Pritchett's house without a warrant or consent, and while there they took from Pritchett's table the mobile phone that later was used

5

against Pritchett during his criminal trial. Doc. 1 at 5. Elsewhere in his filings, Pritchett stated that the search occurred on March 4, 2011. Doc. 54 at 1–4. Pritchett further alleged in his complaint that he originally was scheduled for trial in October 2011, but trial was postponed so that Defendants could return to his home to retrieve the cellular phone and then send it for forensic testing. Doc. 1 at 6. Despite these allegations, Pritchett's trial counsel never suggested that the arrest and search occurred on September 27, 2011 or that the phone was taken from a table instead of Pritchett's pocket. Doc. 49–7.

On May 18, 2012, Pritchett moved to suppress the evidence and electronic data retrieved or seized from his phone in conjunction with his "5th of May [sic], 2011" arrest. Doc. 49-6 at 2. Pritchett's counsel admitted the phone was seized incident to his arrest, but he argued that even if it was permissible to seize personal property without a warrant when incident to a lawful arrest, the electronic data contained on Pritchett's phone was protected from a warrantless search. Doc. 49-6 at 2. The trial court denied the motion to suppress, concluding that Pritchett consented to the search of his phone because "it is obvious" he had given his password to the officers so they could unlock the phone and view the messages. Doc. 49-7 at 4.

At trial, along with evidence from Pritchett's phone, the court admitted into evidence the text messages from the victim's phone, and the prosecution connected the messages received on the victim's phone to other records related to Pritchett's phone. Doc. 49-7 at 8. The victim testified that Pritchett sent her text messages of a sexual nature, she identified her phone, and she described the text messages that Pritchett sent her. Doc. 49-7 at 14–18. The victim also testified that Pritchett approached her at church on several occasions, invited her to his house for dinner, attempted to hold her hand, and had her listen on the phone to him having sexual relations with

6

another woman. Doc. 49-7 at 16–17. The victim's mother and her great aunt also testified to seeing texts of a sexual nature sent to the victim and to Pritchett's attempts to visit with the victim. Doc. 49-7 at 21 & 24–25.

The jury convicted Pritchett on all charges. Doc. 49-7 at 33. During a hearing on a motion for a new trial on June 26, 2012, Pritchett's counsel again raised the issue of consent to the search of the phone. Counsel admitted, "Probable cause was there. There was nothing to prevent them from getting a warrant. They just never got a warrant." Doc. 49-7 at 34. The trial court denied the motion for a new trial. Doc. 49-7 at 35. Pritchett was sentenced to 30 months in prison to be followed by five years of supervised release. Doc. 49-11. Pritchett did not appeal.

On September 24, 2013, Pritchett completed the verified complaint in this federal action, and the court received it on September 30, 2013. Doc. 1 at 1 & 4.

**B.     Official Capacity**

To the extent Pritchett sues Defendants in their official capacities, they are immune from monetary damages. Official-capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). State officials may not be sued in their official capacity unless the state has waived its Eleventh Amendment immunity or unless Congress has abrogated the state's immunity, and neither has occurred in this case. *See Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996), regarding abrogation by Congress; *Pennhurst St. School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), regarding Eleventh Amendment immunity; and *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990), for proposition that the State of Alabama has not waived its Eleventh Amendment immunity). In light of the foregoing,

Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.

## C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity, which offers complete protection from civil damages for government officials sued in their individual capacities, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, there is no dispute that Defendants were acting within the course and scope of their discretionary authority when the incidents complained of occurred. Pritchett must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Qualified immunity gives government officials breathing room to make reasonable but mistaken

judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). Thus, Pritchett must demonstrate it would have been clear to a reasonable officer that the warrantless seizure of his phone and its contents was unlawful in light of the facts known to the officer and clearly established law. *E.g.*, *Wilson v. Phares*, 2015 WL 1474627, at *10–11 (M.D. Ala. Mar. 31, 2015) (discussing qualified immunity in context of consent to search); *Mullinex v. Luna*, 136 S. Ct. 305, 308 (2015) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). If Pritchett cannot establish both elements to satisfy his burden, then Defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 241–42 (2009)).

The parties in Pritchett's prior criminal proceedings agreed that Pritchett's arrest occurred on about March 5, 2011, and that his mobile phone was recovered from his pocket. And all the trial evidence supported this conclusion. In fact, until he filed this federal suit, Pritchett never suggested that an arrest or seizure occurred on September 27, 2011 or that officers took his phone from a table instead of his pocket. There is simply no evidence beyond Pritchett's conclusory, self-serving statements that the arrest occurred on a date other than on about March 5, 2011 or that officers took Pritchett's phone from a table instead of his pocket. It is not enough for Pritchett to make a conclusory assertion of a material fact to create a genuine dispute over that fact. *See Holifield*, 115 F.3d at 1564 n.6 ("[C]onclusory assertions to the contrary, in the absence of supporting evidence, are insufficient to withstand summary judgment."); *Morris v.*

9

*Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981) ("When [plaintiff] was unable to respond to the court's notice with anything more than a repetition of his conclusional allegations, summary judgment for the defendants was not only proper but required."). On the record before the court, no reasonable factfinder would draw the inference that officers arrested Pritchett on September 27, 2011, instead of March 5, 2011, or that they took his phone from a table instead of his pocket. *See Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) ("Evidence that is 'merely colorable, or is not significantly probative' of a disputed fact cannot satisfy a party's burden, and a mere scintilla of evidence is likewise insufficient.") (citations omitted).

Pritchett cannot establish that his right to be free from the warrantless search of a mobile phone taken from his pocket incident to an arrest was clearly established in 2011. It was not until 2014 that the Supreme Court finally decided that "a warrant is generally required before such a search [of information on a cell phone], even when a cell phone is seized incident to arrest." *Riley v. California*, 134 S. Ct. 2473, 2493 (2014); *see United States v. Allen*, 416 F. App'x 21, 27 (11th Cir. 2011) ("Whether the warrantless search of a cell phone incident to arrest violates a person's Fourth Amendment expectation of privacy is an unanswered question in this Circuit."). Moreover, there was no question at the trial court whether the officers had probable cause to search his phone; Pritchett's counsel admitted that they did. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251 (11th Cir. 2013) (holding that "in cases involving arrests or warrantless searches or seizures, law enforcement officers are entitled to qualified immunity if they had even arguable probable cause") (footnote and citations omitted). Consequently, even if Defendants committed a constitutional violation in taking and searching Pritchett's phone when they arrested him pursuant to a warrant in 2011, Pritchett's constitutional right to avoid a

warrantless search of his phone was not clearly established, and therefore Defendants are entitled to qualified immunity.

**D.     *Heck v. Humphrey* and the Statute of Limitations**

The Court of Appeals reversed the judgment previously entered in this case because the record did not adequately reflect whether Pritchett's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Pritchett v. Farr*, 592 F. App'x 816, 818–19 (11th Cir. 2013) (per curiam). Although, as set forth above, the immunity analysis disposes of Pritchett's claims, in the interest of completeness the court will address Defendants' *Heck* and statute of limitations arguments. *See* Doc. 49 at 3–8.

In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486–87. Under *Heck*, then, the relevant inquiry is "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. To determine if a claim is barred, "the court must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted." *See Hughes v. Lott*, 350 F.3d 1157, 1160 n.2 (11th Cir. 2003). If *Heck* applies, "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489–90.

Here, Pritchett claims that Defendants conducted an illegal, warrantless search of his house and seized his phone and its contents in violation of the Fourth Amendment. When the Court of Appeals for the Eleventh Circuit remanded this case, it explained that, without knowing the statutes of conviction or evidence against Pritchett, it was impossible to determine whether Pritchett's § 1983 suit would necessarily imply the invalidity of his criminal convictions. *Pritchett*, 592 Fed. App'x at 818–19. Furthermore, the Eleventh Circuit held that the record before it did not foreclose the possibility that Pritchett's criminal convictions might be valid, despite an illegal search, because the text messages taken from Pritchett's phone might "have been admissible under the inevitable discovery doctrine because the police conceivably could have discovered that same evidence by looking at the victim's phone." *Id.* at 819. With the benefit of a full record, the court concludes that *Heck* does not bar Pritchett from pursuing his § 1983 claims because a judgment in this action would not necessarily imply the invalidity of his criminal convictions.

Pritchett's convictions are for enticing a child for immoral purposes[2] and electronic solicitation.[3] The evidence against Pritchett included text messages that did not come from Pritchett's phone but rather came from the victim's phone and were connected by separate phone records to Pritchett's phone and his address. In addition, at trial the victim testified, identifying

---

[2] Under Alabama law, "[i]t shall be unlawful for any person with lascivious intent to entice, allure, persuade, or invite . . . any child under 16 years of age to enter any vehicle, room, house, office, or other place for the purpose of proposing to such child the performance of an act of sexual intercourse or an act which constitutes the offense of sodomy or for the purpose of proposing the fondling or feeling of the sexual or genital parts of such child or the breast of such child, or for the purpose of committing an aggravated assault on such child, or for the purpose of proposing that such child fondle or feel the sexual or genital parts of such person." Ala. Code § 13A-6-69 (1975).

[3] Under Alabama law, "a person who, knowingly, with the intent to commit an unlawful sex act, entices, induces, persuades, seduces, prevails, advises, coerces, lures, or orders . . . by means of a . . . cellular phone . . . a child who is at least three years younger than the defendant . . . . for the purpose of engaging in sexual intercourse, sodomy, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for his or her benefit or for the benefit of another, is guilty of electronic solicitation of a child." Ala. Code § 13A-6-122 (1975).

her phone and describing the text messages Pritchett sent her. The victim testified that Pritchett approached her on several occasions, invited her to his house for dinner, attempted to hold her hand, and had her listen to him on the phone while he had sexual relations with another woman. Other witnesses testified about Pritchett's contact with the victim and that they saw text messages from Pritchett to the victim that were of a sexual nature. Therefore, even assuming Defendants illegally seized Pritchett's mobile phone and its contents, there was more than sufficient evidence on which a reasonable factfinder could have convicted Pritchett. Consequently, a judgment in the instant action would not necessarily imply the invalidity of Pritchett's criminal convictions, so *Heck* does not bar Pritchett's § 1983 claims.[4]

However, even though Pritchett may clear the *Heck* hurdle, his claims are barred by the applicable two-year statute of limitations. The Civil Rights Act has no express period of limitations, therefore § 1983 draws on state statutes of limitations for personal-injury tort claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Alabama, that period is two years. *See* Ala. Code § 6-2-38 (1975); *Lufkin v. McCallum*, 956 F.2d 1104, 1105 & 1108 n.2 (11th Cir. 1992) (statute of limitations for a § 1983 action in Alabama is two years). Although state law establishes the limitations period, "federal law controls when the underlying cause of action accrued, triggering this limitations period to begin." *Baker v. Sanford*, 484 F. App'x 291, 293

---

[4] Even if *Heck* did bar Pritchett's claims, then Defendants would be entitled to judgment as a matter of law based on *Heck*, and Pritchett's claims would be dismissed without prejudice so that he could file suit in the event his convictions are eventually undermined as required in *Heck*. *See Heck*, 512 U.S. at 489–90. In addition, to the extent Pritchett claims instead that Defendants wrongfully acted on the arrest warrant, this claim could be construed as a § 1983 malicious prosecution claim. *See Whiting v. Traylor*, 85 F.3d 581, 584–86 (11th Cir. 1996). An arrest warrant is treated as initiation of legal proceedings, *see id.*, and a § 1983 claim challenging an arrest pursuant to the warrant is analogous to malicious prosecution, not false arrest or false imprisonment. *Id.* & n.7. A § 1983 claim of malicious prosecution in Alabama requires, among other things, a showing that the proceedings ended in plaintiff's favor. *Id.* at 585–86 (holding that such a plaintiff does not have a cause of action until the underlying proceeding terminates in the plaintiff's favor); *see Cutts v. Am. United Life Ins. Co.*, 505 So. 2d 1211, 1214 (Ala. 1987) (listing elements of claim for malicious prosecution in Alabama). Pritchett, whose convictions remain outstanding, cannot make that showing.

13

(11th Cir. 2012) (per curiam) (citing *Wallace*, 549 U.S. at 388). In the context of false-imprisonment claims, the statute of limitations begins when the false imprisonment ends, that is, when "the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 389–90 & 397; *see also Rice v. Sixteen Unknown Fed. Agents*, 658 F. App'x 959, 962 (11th Cir. 2016) (per curiam) (holding that plaintiff did not challenge district court ruling that claim of unlawful search and seizure accrued when plaintiff learned of the event "on or soon after" the date of seizure, but suit was filed beyond applicable deadline); *cf. Kelsey v. Macon Bibb County Bd. of Comm'rs*, 647 F. App'x 1002, 1004 (11th Cir. 2016) (per curiam) (holding that claim on warrantless search leading to arrest and conviction accrued, at the latest, when plaintiff was convicted in 2003, and suit filed beyond applicable statute of limitations).

Therefore, the statute of limitations on the warrantless seizure of Pritchett's property began to run, at the latest, when Pritchett became held pursuant to legal process. *Wallace*, 549 U.S. at 393 & 397. Pritchett pleaded not guilty and waived arraignment on August 31, 2011.[5] Thus, Pritchett's cause of action accrued at the latest on August 31, 2011, and he had until August 31, 2013, to file his § 1983 lawsuit. His complaint, signed on September 24, 2013, is beyond the deadline. Pritchett makes no suggestion that he is entitled to equitable tolling of the limitations period. *See id.* ("Neither [Plaintiff's] ignorance of the law nor his pro se status constitute "extraordinary circumstances" sufficient to toll the running of the statute of limitations."). Because summary judgment is due to Defendants on these grounds, the court does not address Defendants' remaining arguments for summary judgment.

---

[5] Pritchett alleges that the illegal search and seizure occurred on September 27, 2011, and he argues that his complaint, signed and mailed on September 24, 2013, is therefore timely. *See* Doc. 1 at 4. But, as previously discussed, none of the evidence in the summary-judgment record supports Pritchett's conclusory assertion that the search occurred on September 27, 2011. Instead, all the evidence before the court indicates that Pritchett was arrested and his phone was seized on or about March 5, 2011.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment (Doc. 49) on behalf of Defendants be GRANTED;

2. This case be dismissed with prejudice in accordance with Federal Rule of Civil Procedure 56.

It is further ORDERED that on or before **May 16, 2017**, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 2nd day of May, 2017.

                                          /s/ Gray M. Borden
                                  UNITED STATES MAGISTRATE JUDGE